| UNITED STATES DISTRICT COURT | SOUTHERN DISTRICT OF TEXAS |
|---|---|

ST. LUKE'S EPISCOPAL HEALTH SYSTEM  §
CORPORATION, *et al.*,                §
                                      §
       Plaintiffs,           §
                                      §
*versus*                              §  CIVIL ACTION H-03-5534
                                      §
FACTORY MUTUAL INSURANCE              §
COMPANY,                              §
                                      §
       Defendant.            §

# Opinion on Code Compliance

1.   *Introduction.*

A hospital's basement flooded during a storm causing damage to its electrical system. Its insurance company funded repairs to restore power and fix the electrical system. Under the demolition and increased cost of construction provision of the policy, the hospital argues that to meet city building codes, its repaired equipment must be replaced with new equipment. The city, however, did not enforce replacement as required by the policy.

2.   *Background.*

St. Luke's Episcopal Hospital bought coverage from Factory Mutual Insurance Company for property damage and business interruption. In June 2001, tropical storm Allison struck Houston, flooding the hospital's basement. It lost power from damage to its electrical switchgear, consisting primarily of normal and emergency power distribution centers.

Funded by Factory, the hospital used its own electrical contractor to repair or replace the distributors. Within ten days, the initial repairs were completed and the hospital re-opened.

The hospital's claim for reconstruction included the cost to replace the refurbished distributors with new distributors. It claims the refurbished distributors do

not meet code requirements because they are unlisted by a nationally-recognized agency, like Underwriter Laboratories. Because the demolition and increased cost of construction provision of the policy required enforcement by a government agency before Factory would pay for new equipment, it asked for additional information supporting the hospital's claim.

The hospital responded with a January 15, 2002, letter written by John M. Evans, Jr. of the Texas Department of Health at the request of the Federal Emergency Management Agency. It addressed the expiration of temporary relocation waivers granted to hospitals after the flood allowing them to move patients to a location not covered by its license. It also expressed the department's position that when functional components are repaired or replaced, the system must still meet code standards.

Out of a $95,630,993 proof of loss claim by the hospital, the parties agreed on $60,599,879 as undisputed. Factory rejected the remainder, refusing to replace the repaired equipment with new equipment. Relying on Evans' testimony, Factory argues that the January letter was not technically a deficiency notice and, therefore, did not constitute administrative action directed to the hospital. St. Luke's then sued.

Now, the hospital points to a letter from July 11, 2006, as proof of enforcement. In the letter, the health department putatively advises the hospital to comply with the current building code. It also refers to the January 2002 letter saying that the temporary waivers had expired with the letter's issuance. Factory contends that the July letter pertains to the hospital's major expansion and not the flood of June, 2001.

The hospital moved for summary judgment for $25 million under DICC provision arguing that both letters constitute the required enforcement.

3. *Code Compliance.*

To determine whether Factory has a duty to replace the equipment, the court first turns to the terms of the insurance policy. It requires Factory to pay reasonable and necessary costs to satisfy the minimum requirements of the enforcement of a law regulating the repair of structures at an insured location so long as: (a) the law was in

force when the insured loss occurred, (b) the law's enforcement is a direct result of the insured loss, and (c) the law is not one with which the hospital would have to comply with had the insured loss not occurred.

"Enforcement" is the "carrying out of a mandate or a command." BLACK'S LAW DICTIONARY 528 (6th ed. 1990). The phrase "enforcement of a law" focuses not on what the code technically says but on what building officials actually require. The city carries out the "mandate or command" of a code provision by executing building standards and withholding permits for construction in violation of those standards. Here, no positive action was undertaken by city officials, nor was the hospital sanctioned as a result of the alleged non-compliance.

### A. *The 2002 Letter*.

St. Luke's argues that the January 15, 2002, letter constitutes the required enforcement of a law. The letter explains:

> Section 133.161(a)(3) states that all of the requirements contained in Chapter 133 relating to new construction are applicable to renovations, additions and alterations. When renovations take place and repairs are made to functional components, the entire system shall perform up to the standards contained in the rules. For example, if a new transfer switch is required it shall be installed in a system which complies with the new construction requirements contained in Chapter 133 (Hospital Licensing Rules).

According to the hospital, the letter mandates compliance with new construction requirements of Chapter 133 of the Texas Administrative Code. This includes requiring that systems be listed with a nationally-recognized listing agency. The hospital is wrong.

When the health department intends to notify a hospital of a rule violation, it issues a deficiency notice. The 2002 letter it is not a deficiency notice. John Evans, who penned the letter, attests that its intent was not to require replacement of the hospital's basement-level equipment with new UL-listed equipment. Instead, the letter addressed temporary relocation waivers and required repaired or replaced equipment to function properly. Indeed, the letter itself explains that "when renovations take place and repairs are made to functional components, the entire system shall *perform* up to the standards

3

contained in the rules." (emphasis added).

The letter does not mandate the replacement of an entire system as a result of repairs or replacements to that system.  If that were the case, each time a hospital replaced a fan motor on an older air conditioning system, the entire system would have to be evaluated for current compliance and potentially replaced.  According to Evans, this is not the intent of the department rules, nor how they were then interpreted.  Instead, the 2002 letter was simply a letter issued to FEMA at FEMA's request to clarify relocation waiver issues allowing the agency to release funds.

### B.     *The 2006 Letter.*

More than five years after the flood, the hospital received a curiously timed July 11, 2006, letter from the health department. It contends that this letter also establishes the required enforcement.  The letter relates to a new addition and expansion to the hospital.  In connection with this expansion, the health department advised the hospital that it may be required to change some of its electrical system components to comply with current codes.  Consequently, the letter is consistent with current rules applying new construction requirements to "renovations, additions and alterations." 25 TEX. ADMIN. CODE § 133.161(a)(3).

In addressing the 2002 letter, the 2006 letter submits that the waivers previously granted to the hospital for its *electrical systems* had expired upon receipt of the 2002 letter. In an apparent contradiction, however, the     2002 letter dealt with *relocation* waivers, and not waivers for temporary electrical repairs.  Moreover, the 2006 letter does not specify equipment problems that did not pre-date the flood, nor is it carrying out a "mandate or demand" by city officials.

The hospital cannot establish that its equipment was listed at the time of original installation.  The 2006 letter does not contradict this nor mandate replacement of the repaired distributors because they are not listed.

3.   *Conclusion.*

In the past, the department has issued deficiency notices to the hospital. For example, in June 2001, it notified the hospital that its Emergency Power Master Plan was deficient, and it required specific courses of action to remedy the deficiencies. The letters at issue here do not constitute deficiency notices from the health department.

St. Luke's has been open and operating its repaired equipment, with health department approval, for more than five years. The department of health inspected the repaired equipment before allowing the hospital to reopen, and has frequently inspected the hospital since. There has been no enforcement of a law or ordinance as required under the policy. The hospital cannot show that it was not restored to its pre-flood conditions. Factory has, therefore, complied with all applicable provisions of its policy.

Signed on April 24, 2007, at Houston, Texas.

_____
Lynn N. Hughes
United States District Judge